IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| ENTRUST ENERGY, INC., *et al.*, | § § | Case No. 21-31070 |
| Debtors. | § § § | Jointly Administered |
| | § § | |
| THE ENTRUST LIQUIDATING TRUST, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | Adv. Pro. No. 21-03930 |
| SHELL ENERGY NORTH AMERICA (US), L.P. and SHELL TRADING RISK MANAGEMENT, LLC | § § § § | |
| Defendants. | § § | |

### SHELL ENERGY NORTH AMERICA (US), L.P. AND SHELL TRADING RISK MANAGEMENT, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE (ECF NO. 38)

Defendants Shell Energy North America (US), L.P. ("Shell Energy") and Shell Trading Risk Management, LLC (collectively, the "Shell Defendants") file this Response in Opposition to the Motion to Strike filed by Plaintiff Entrust Liquidating Trust, by assignment of the claims of Entrust Energy, Inc., Entrust Energy East, Inc. and Power of Texas Holdings, Inc. (collectively, the "Debtors").[1]

---

[1] In accordance with Bankruptcy Local Rule 9013-1(g)(1), the Shell Defendants certify that counsel for the Shell Defendants conferred with counsel for the Debtors on February 4, 2022, regarding this Motion to Strike. The parties were unable to resolve their dispute over the Motion.

## INTRODUCTION

This is a dispute about whether and when the Shell Defendants had the right to suspend performance and otherwise terminate the agreements between the parties. The Debtors allege that Shell Energy sent a termination notice on February 14 "on the pretext that the Debtors breached Section 3.17 of [a governing contract] by violating the Debtors' own internal risk policies."[2] But the Debtors failed to attach any of the governing contracts, the February 14 termination notice, or their own email in which they admitted to violating their risk policy.

Now that the Shell Defendants have attached those documents to their Rule 12(b)(6) Motion to Dismiss, the Debtors argue that the Court should consider only the documents they believe help their claims: the contracts and the February 14 termination notice. The Debtors acknowledge that these documents are sufficiently referenced in the Amended Complaint to justify their consideration at the Rule 12(b)(6) stage, but they ask the Court to strike their February 14 email because it shows that the Shell Defendants did not act on "pretext"—they accepted the Debtors' own description of their non-compliance with the governing contracts. The Court should deny the Debtors' strategic, selective Motion to Strike.

## BACKGROUND

On December 13, 2021, the Shell Defendants moved under Rule 12(b)(6) to dismiss the Debtors' Amended Complaint.[3] The Shell Defendants attached five documents to that motion:[4]

- Exhibit A – the Second Amended and Restated Global Agreement between the parties;

- Exhibit B – three Second Amended and Restated Master Power Purchase and Sale Agreements between the parties;

---

[2] Am. Compl. ¶ 34, ECF No. 8.
[3] *See* ECF No. 30.
[4] These five documents are ECF Nos. 30-1 through 30-5.

1

- Exhibit C – the template Master Power Purchase & Sale Agreement prepared by the Edison Electric Institute;

- Exhibit D – the Notice of Default and Termination that Shell Energy emailed to the Debtors on February 14, 2021; and

- Exhibit E – the February 14, 2021, email from the Debtors to Shell Energy that gave rise to that Notice of Default and Termination.

Exhibits A through C are the contracts that underlie this dispute between the Debtors and the Shell Defendants. That dispute arose on February 14, 2021, when the Debtors emailed Shell Energy a report showing that they had breached their contractual obligation to enter supply purchase transactions for at least 90% of their forecasted load, and Shell Energy responded by sending a notice of default based on the "forecast and hedge report provided [that day]."[5] The notice of default is Exhibit D, and the referenced "forecast and hedge report" is Exhibit E. The Shell Defendants explained that the Court should consider these documents when deciding the Rule 12(b)(6) motion to dismiss "because the Debtors have no good-faith basis to question their authenticity and [the documents] 'were sufficiently referenced in the complaint to permit their consideration on a motion to dismiss.'"[6]

On January 10, 2022, the Debtors filed their Opposition to the Shell Defendants' Motion to Dismiss, and they separately filed the Motion to Strike Exhibit E.[7] As predicted, the Debtors do not question the authenticity of any of the five documents that the Shell Defendants attached to their Motion to Dismiss. Nor do the Debtors deny that the Court can consider documents attached to a Rule 12(b)(6) motion to dismiss when resolving that motion. In fact, the Debtors agree that

---

[5] February 14 Termination Notice, ECF No. 30-4.
[6] Shell Defs.' Mot. Dismiss at 8 n.23 (quoting *Walch v. Adjutant Gen.'s Dep't of Texas*, 533 F.3d 289, 294 (5th Cir. 2008)), ECF No. 30.
[7] *See* ECF Nos. 37 (Opposition), 38 (Motion to Strike).

2

"Exhibits A-D may be considered by the Court" at this stage.[8] They object only to Exhibit E, contending that it "would be improper evidence for consideration in connection with a motion to dismiss."[9]

The Debtors concede that, while a court's review is ordinarily limited to the four corners of a complaint, the "Fifth Circuit recognizes a limited exception to this general rule."[10] According to the Debtors, this exception applies only when "three conditions are met: (i) the document is attached to a defendant's motion to dismiss; (ii) the document is referred to in the plaintiff's complaint; and (iii) the document is central to the plaintiff's claims."[11] The Debtors appear to admit that these conditions are met for Exhibits A through D, but they claim that the Shell Defendants "do not even attempt to make this showing" for Exhibit E.[12] The Debtors also argue that, even if Exhibit E were "correctly cited," the Court should disregard it because "[d]ocuments used to support an affirmative defense . . . are not properly considered on a motion to dismiss."[13] The Debtors do not acknowledge or address the precedential Fifth Circuit decision—*Walch v. Adjutant General's Dept. of Texas*, 533 F.3d 289 (5th Cir. 2008)—that the Shell Defendants relied on for their assertion that Exhibit E is a proper part of the record before this Court.[14]

## ARGUMENT

### I. Standard of Review

Motions to strike are authorized by Federal Rule of Civil Procedure 12(f), under which "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial,

---

[8] Debtors' Opp'n Mot. Dismiss at 4 n.4 (underlining omitted), ECF No. 37.
[9] *Id*. The parties agree that, if Exhibit E is not a proper part of the Rule 12(b)(6) record, the Motion to Dismiss "should not be converted into a motion for summary judgment." *Id*.
[10] Debtors' Mot. Strike at 2, ECF No. 38.
[11] *Id*.
[12] *Id*.
[13] *Id*.
[14] *See* Shell Defs.' Mot. Dismiss at 8 n.23 (discussing *Walch*).

3

impertinent, or scandalous matter." This rule "applies only to pleadings, not to other filings or documents." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 664 (N.D. Tex. 2011) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 n.6 (3d ed. 1998 & Supp. 2010)).

    **II.    The Debtors' Motion to Strike Is Procedurally Improper Because Exhibits Are Not Pleadings**

The Debtors repeatedly cite a case that explains why this Motion to Strike is improper. In *Kaye*, the plaintiff moved to strike exhibits that the defendants attached to their Rule 12(b)(6) motion to dismiss. 453 B.R. at 653. The court agreed with the plaintiff that the exhibits should not be considered, but it did "not *strike* these exhibits" because "Rule 12(f) applies only to pleadings" and motion exhibits are not pleadings. *Id*. at 664; *see also* Fed. R. Civ. P. 7(a) (listing "allowed" pleadings, such as complaints and answers to complaints). The Court should deny the Debtors' Motion to Strike because there is no basis under the rules for striking an exhibit to a motion to dismiss. The proper course is for the plaintiff to argue in its opposition to the motion to dismiss that the exhibits should not be considered, not to file an unauthorized motion. The Shell Defendants object to the Debtors' decision here to file a separate motion to strike despite citing precedent showing that such motions are inappropriate.

    **III.    The February 14 Emails Were Sufficiently Referenced in the Amended Complaint to Permit Their Consideration on a Motion to Dismiss**

If the Court considers the Debtors' arguments on the merits, it should reject them. Consideration of the February 14, 2021, email from the Debtors to Shell Energy (Exhibit E to the Motion to Dismiss) is appropriate for the same reasons that it is appropriate to consider the Notice of Default that Shell Energy emailed to the Debtors that day (Exhibit D): these documents are referenced in the Amended Complaint, and no party questions their authenticity.

4

The facts here are like those in *Walch*, the Fifth Circuit case that the Shell Defendants relied on in their Motion to Dismiss and that the Debtors ignore in their Opposition and in their Motion to Strike. There, the plaintiff, Walch, "alleged procedural and evidentiary defects in his discharge from the Texas Air National Guard." 533 F.3d at 301. The district court dismissed this claim, and the Fifth Circuit affirmed based on two letters not attached to the complaint. In the first letter, "the Texas Air National Guard commander informed Walch that a recommendation was being sent to The Adjutant General that Walch be involuntarily discharged as an Air National Guardsman." *Id*. at 292. In the second, "The Adjutant General of Texas . . . informed Major Walch of the acceptance of the recommendation for Walch's dismissal." *Id*.

The Fifth Circuit relied on both letters when affirming the dismissal of Walch's due process claim. It emphasized that the first letter "notified him of a recommendation that he be discharged pursuant to 'Adjutant General of Texas Regulation 635–100 (15 Jan 1998),'" provided Walch notice of the "general grounds" for the recommendation, and told him the "name of his appointed counsel and of his right to submit a written response." *Id*. at 302. The Fifth Circuit held that this notice was sufficient because, among other reasons, the "version of the regulation cited in the notice sent about the recommended discharge, was upheld in a state court decision despite that no hearing was required." *Id*. And it held that it was appropriate to rely on the notice "even under a Rule 12(b)(6) analysis" because "[n]o party questions the authenticity of these two documents and both were sufficiently referenced in the complaint to permit their consideration on a motion to dismiss." *Id*. at 294. The two letters were at the center of Walch's claim: the first letter told him why he was being considered for termination, and the second letter made that termination official.

These two letters are like the February 14, 2021, emails that the Shell Defendants attached to their Motion to Dismiss. The first email (Exhibit D) provides the grounds for termination. The

Debtors emailed Shell Energy a report showing that they were out of compliance with their own risk policy, and that they had incurred and expected to continue to incur massive losses. The second email (Exhibit E) then makes that termination official based on the "forecast and hedge report provided [that day] by [the Debtors] to Shell."[15] Both emails were sufficiently referenced in the Amended Complaint, where the Debtors allege that "Shell Energy's Termination Notice was a contrivance to serve the Shell Defendants' commercial goal of extricating themselves from their contractual obligations to the Debtors."[16] The Debtors claim that "Shell Energy sought to do so on the pretext that the Debtors breached Section 3.17 of the Global Agreement by violating the Debtors' own internal risk policies" even though "Shell Energy was wrong" and had "no idea whether the Debtors had violated their own Risk Policy."[17] These allegations are a direct reference to the February 14 correspondence between the parties in which the Debtors admitted a violation of the Risk Policy and Shell Energy declared a default based on that violation.

The Debtors acknowledge as much when they admit that the second email (Exhibit D) may be considered at this stage.[18] They claim that the Court should disregard only the first email because that first email undermines the Debtors' claims, but they cite no law supporting the idea that the Court should consider only the documents supporting the plaintiff's claim. That claim is foreclosed by *Walch*, where the Court relied on the two termination letters to *reject* Walch's due process claim.

At most, the Debtors cite authority for the proposition that it would be inappropriate to consider the February 14 emails to the extent that they support an affirmative defense. *See In re*

---

[15] February 14 Termination Notice.
[16] Am. Compl. ¶ 34.
[17] *Id.*
[18] Debtors' Opp'n Mot. Dismiss at 4 n.4 (underlining omitted).

*Xtreme Power Inc.*, 563 B.R. 614, 629 (Bankr. W.D. Tex. 2016) ("documents used to support a defendant's affirmative defense appear not to fall within the exception" permitting consideration of documents not attached to the complaint); *but see Hewlett v. Harris Cty. Texas Dist. Attorney's Off.*, No. CV 21-1020, 2022 WL 19615, at *3 & n.2 (S.D. Tex. Jan. 3, 2022) (relying on document referenced in complaint to dismiss complaint on statute-of-limitations grounds). This authority on affirmative defenses does not apply here because the February 14 emails are relevant to the elements the Debtors must allege to establish their claims. Under governing New York law, the Debtors must show, among other things, "adequate performance of the contract by the plaintiff" and "breach of contract by the defendant." *Samsung C&T America, Inc. v. Tommy Bahama Group, Inc.*, No. 20-cv-10348, 2022 WL 229699, at *4 (S.D.N.Y. Jan. 26, 2022) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). The Debtors' February 14 email shows that they were in default under the governing contracts and that Shell Energy had the right to terminate those contracts in response. Far from establishing an affirmative defense, this email shows that the Debtors failed to state a claim. The Fifth Circuit's decision in *Walsh* establishes that it is appropriate for the Court to consider documents such as this that undermine the plaintiff's claims.

## CONCLUSION

The Court should deny the Debtors' Motion to Strike.

Dated: February 7, 2022                Respectfully submitted,

                                                            **WOMBLE BOND DICKINSON (US) LLP**

                                                            */s/ Todd A. Atkinson*
                                                            Paul B. Turner (TX Bar No. 24053638)
                                                            Todd A. Atkinson (TX Bar No. 24121426)
                                                            811 Main Street, Suite 3130
                                                            Houston, Texas 77002
                                                            Telephone:    (346) 998-7801
                                                            Facsimile:     (346) 998-5901

Email: paul.turner@wbd-us.com
    todd.atkinson@wbd-us.com

Christopher W. Jones (admitted *pro hac vice*)
Samuel B. Hartzell (admitted *pro hac vice*)
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-8173
Facsimile: (919) 755-6771
Email: chris.jones@wbd-us.com
    sam.hartzell@wbd-us.com

*Counsel for Defendants Shell Energy North America (US), L.P. and Shell Trading Risk Management, LLC*

**CERTIFICATE OF SERVICE**

    I certify that on February 7, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                       */s/ Todd A. Atkinson*
                                       Todd A. Atkinson